UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NICOLAS AARON CLARK,<br><br>                Petitioner,<br><br>v.<br><br>MELISSA ANDREWJESKI,<br><br>                Respondent. | CASE NO. C23-6027 JNW<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION |

This matter comes before the Court on Petitioner's Objections to the Report and Recommendation of Magistrate Judge Grady J. Leupold. (Dkt. No. 15.) Having reviewed the Objections, the Report and Recommendation (R&R) (Dkt. No. 13), Respondent's Response (Dkt. No. 17), and all supporting materials, the Court OVERRULES the Objections and DISMISSES Petitioner's habeas petition.

**BACKGROUND**

Petitioner Nicolas Clark seeks habeas relief under 28 U.S.C. § 2254 for constitutional errors he claims plagued his state conviction for sexual exploitation of a minor, child

1  molestation, and possession of depictions of a minor engaged in sexually explicit conduct. Clark
2  contends that officers violated his Miranda rights during execution of a search warrant by
3  eliciting from Clark the passcode to his phone that was used to retrieve the images used in his
4  prosecution. Clark argues that in ruling on this personal restraint petition, the state courts erred in
5  rejecting his Miranda, Fourth, Fifth, Sixth, and Fourteenth Amendment claims. He also argues
6  that the state court improperly rejected his ineffective assistance of trial and post-conviction
7  relief counsel, claims which are premised on the failure to investigate his Miranda claim.

8  **A.      Relevant Factual Background**

9        After holding a bench trial, the Superior Court of Washington for Clark County found
10 Clark guilty of three counts of sexual exploitation of a minor, two counts of first degree child
11 molestation, and six counts of first degree possession of depictions of a minor engaged in
12 sexually explicit conduct. (Dkt. 11-1 at 2–3, Ex. 1.) As the R&R explains, Clark was identified
13 as uploading suspected child pornography to a website in June 2018 after Detective Chadd Nolan
14 obtained a search warrant to investigate the source of the photos. (R&R at 2.) The first warrant
15 allowed police to gather information from Verizon, which helped them identify Clark as the
16 source of the photos. (Id. at 3.) Police then obtained a second warrant to search Clark's residence
17 and business, including any electronic devices at these locations. (Id.) During the execution of
18 this warrant in early October 2018, officers found Clark in possession of an iPhone that they then
19 seized and on which they found a large number of sexually suggestive images of a minor. (Id.)
20 Officers also obtained a search warrant in December 2018 to search the Clark residence to
21 compare evidence in the home with the images seized from the iPhone. (Id. at 4.)

22        A central focus of Clark's habeas petition is his argument that officers coerced from him
23 the passcode to his iPhone during execution of the second warrant without a proper Miranda
24

warning. The Court reviews in some detail the facts in the record of the appeals and additional information Clark provided with his habeas petition.

First, as the State Court of Appeals noted in ruling on Clark's direct appeal, Clark failed to raise the claimed Miranda violation at trial and his argument on appeal relied on facts outside of the record. (Dkt. No. 11-1 at 37.) The Court of Appeals refused to consider the claim and there was no consideration of the argument. (Id.)

Second, Clark raised his arguments about the validity of his provision of the passcode in his personal restrain petition (PRP). In the PRP, Clark argued that "(1) the police exceeded the scope of the search warrant when they asked for his cellphone password, (2) the police violated his Fifth Amendment rights when they asked for his cellphone password after he had been advised of his constitutional rights and had requested counsel, and (3) the police violated his Sixth Amendment rights when they continued to question him after he had requested counsel." (Dkt. No. 11-1 at 43.) The Court of Appeals found that he had failed to show constitutional error, noting:

> The recording of Clark's interview with the police demonstrates that he was not under a custodial interrogation. Nevertheless, the police advised him of his constitutional rights. Clark volunteered his cellphone password. Therefore, the police did not exceed the scope of the warrant. And at no point in the recording of this interview did Clark invoke the right to an attorney. Therefore, the police did not violate his Fifth or Sixth Amendment rights.

(Id. at 44.)

Third, in denying discretionary review of the PRP, the Washington State Supreme Court agreed with the Court of Appeals and denied review. The Court explained, in part, the weaknesses in Clark's position:

> [Petitioner] mainly argues that when law enforcement officers first interviewed him while executing a search warrant at his home, they exceeded the scope of a warrant by demanding the passcode to his cell phone when the warrant only authorized officers to access the phone biometrically (fingerprint or face recognition). But the acting chief

> judge correctly determined that [Petitioner] voluntarily provided his passcode. The transcript of the interview shows that when an officer informed [Petitioner] that the warrant authorized biometric access to his phone, [Petitioner] responded: "I can give you the digital code if you like? That works just fine too." The officer said "Okay" and asked what the code was. [Petitioner] at first gave four numbers, and when the officer inquired whether it was just a four-digit code, [Petitioner] corrected himself and provided six digits. It is evident that it was entirely [Petitioner]'s idea to give the officer the code. The officer did not prompt him to make that offer.
>
> [Petitioner] also argues that asking for his passcode violated his rights because the request was made during a custodial interrogation after he had invoked his right not to talk to officers. But the interview occurred outside [Petitioner]'s home, and the interviewing officer expressly told [Petitioner] he was not under arrest and was free to leave. The officer did read [Petitioner] his rights, including his right to remain silent, but though the reading of rights is required when police conduct a custodial interrogation, [Petitioner] cites no authority for the notion that conveying rights necessarily makes an interview custodial. And while [Petitioner] did invoke his right to not talk to the officer, the officer did not thereafter interrogate [Petitioner] but simply pointed out to him that the officers had a search warrant for his phone that included authority to access the phone biometrically. [Petitioner] subsequently volunteered his passcode without being prompted to do so, and the officer simply followed up to clarify what the code was. A volunteered statement of any kind is constitutionally barred, and a voluntary statement does not become the product of unlawful interrogation because an officer simply asks the defendant to clarify the statement. State v. Godsey, 131 Wn. App. 278, 285, 127 P.3d 11 (2006). [Petitioner] does not show that officers violated his rights.

(Dkt. 11-1 at 339–40, Ex. 17.)

Fourth, with his habeas petition, Clark provides a transcript of the encounter with Detective Nolan during the execution of the second warrant. It reads, in relevant part:

> CN [Chadd Nolan]: You are free to leave, okay? You are not under arrest, but because this is a criminal investigation as per your search warrant, I'm going to read you these, okay?
>
> NAC [Clark]: Okay.
>
> CN: You have the right to remain silent, anything you say can be used against you in the court of law. You have the right to time [sic] to talk to a lawyer and have him present with you while you are being questioned. If you can't afford to hire a lawyer, one will be appointed to represent you before [being] questioned, if you wish. You can decide anytime to exercise these rights and not answer any questions or make any statements. Do you understand each of those rights, Sir?
>
> NAC: I do.

ORDER ADOPTING REPORT AND RECOMMENDATION - 4

    CN: And having rights [sic] in mind, do you want to talk to me?

    NAC: No.

    CN: Ok. Um, that's fine…uh, but right now…uh…we do have a search warrant for your residence and a search warrant for your phone, and part of that search warrant, if you have read there [sic] yet, includes your biometric ID to unlock your cell phone, so when we do that and after we do that, um…we can go ahead and move on from there, okay?

    NAC: Okay.

    CN: Perfect.

    NAC: I can give you the digital code if you'd like? That works just fine to?

(Dkt. No. 3 at 54-55.) Clark then provided the passcode and, shortly after, the officer ended the recording.

**B.     Habeas Petition**

Clark's habeas petition raises six grounds for relief. (See Dkt. No. 3 at 2; see also R&R at 7-8 (Dkt. No. 13).) First, Clark argues that he received ineffective assistance of counsel at trial because counsel did not challenge the Miranda warning and that post-conviction counsel failed to attack the adequacy of trial counsel's performance on this issue. Second, Clark argues that the officers violated his Fourth Amendment rights by exceeding the search warrant's scope by using the passcode, not his biometrics to unlock the iPhone. Third, Clark argues that officers violated his Fifth Amendment right to avoid self-incrimination by not properly giving him a Miranda warning before giving the passcode. Fourth, Clark argues the officers violated the Sixth Amendment by continuing the interrogate him after the Miranda warning and his stated refusal to speak to officers. Fifth, Clark argues that the State violated his Due Process rights under the Fourteenth Amendment by using the self-incriminating statements against him at trial. Sixth,

1   Clark argues that the police violated his right to remain silent by asking for the passcode after the
2   Miranda warning and his stated refusal to speak further.

3   **C.     Report and Recommendation**

4   In the Report and Recommendation, Judge Leupold found that none of Clark's arguments
5   has merit and recommended that the Court dismiss the habeas petition, deny a request for an
6   evidentiary hearing, and deny issuance of a certificate of appealability. As to the first ground,
7   Judge Leupold found that Clark had failed to exhaust his state court remedies by failing to
8   present it on direct appeal or in his PRP. (R&R at 24-25.) Judge Leupold also found that the
9   claim was procedurally defaulted and that there were no grounds for overcoming the bar on
10  federal review of procedurally-defaulted claims. (R&R at 25-30.) As to grounds three through
11  six, Judge Leupold found that the state court's rejection of Clark's constitutional claims is
12  subject to the deferential Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)
13  standard and that the decision was not contrary to or an unreasonable application of clearly
14  established federal law, or based on an unreasonable determination of the facts. (R&R at 8-9
15  (AEDPA standard) 10-18 (merits of grounds 3-6).) Judge Leupold recommended denial of these
16  claims. As to the second ground, Judge Leupold found that Clark had failed to show the state
17  court's rejection of his claim that the police exceeded the scope of the warrant was contrary to or
18  an unreasonable application of clearly established law, or based on an unreasonable
19  determination of the facts. Judge Leupold then rejected Clark's call for an evidentiary hearing
20  and a request for a certificate of appealability.

21  Clark has filed objections to each of Judge Leupold's determinations and Respondent has
22  filed a short response.

23

24

# ANALYSIS

## A. Legal Standard

Under Federal Rule of Civil Procedure 72, the Court must resolve <u>de novo</u> any part of the Magistrate Judge's Report and Recommendation that has been properly objected to and may accept, reject, or modify the recommended disposition. Fed. R. Civ. P. 72(b)(3); <u>see also</u> 28 U.S.C. § 636(b)(1).

Under AEDPA, federal habeas relief may not be granted unless the state court's decision was: (1) contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of federal law; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. See <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011); 28 U.S.C. § 2254(d)(1)-(2). "[A]n unreasonable application of federal law is different from an incorrect application of federal law." <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000). To be an unreasonable application of federal law, "the state court's ruling on the claim being presented in federal court [must be] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Harrington</u>, 562 U.S. at 103. In other words, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Id.</u> (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)). Under AEDPA's "difficult to meet" standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington</u>, 562 U.S. at 101-02 (quoting <u>Yarborough</u>, 541 U.S. at 664).

### B. Grounds 3-6 – Claims Based on Clark's Provision of Passcode

Judge Leupold correctly determined that Clark's Miranda, Fourth Amendment, Fifth Amendment, and Fourteenth Amendment claims do not warrant habeas relief. In his Objections, Clark largely presents the same arguments that he made to Judge Leupold without identifying any error. Judge Leupold correctly determined that the state courts reasonably applied federal law in rejecting Clark's Miranda-based claims and finding that Clark voluntarily provided his passcode without any violation of Miranda. The Court adopts the R&R's detailed analysis on this issue and finds that Clark's objections are without merit. The record before the Court does not show a Miranda violation. The Court OVERRULES the Objections and ADOPTS the R&R as to these four claims.

### C. Ground 2 – Fourth Amendment Scope of Warrant

Clark challenges Judge Leupold's determination that the state courts reasonably rejected his Fourth Amendment claim that the officers exceeded the scope of the warrant by using Clark's passcode, rather than biometric data to unlock the iPhone. Judge Leupold rejected the claim because federal relief for a Fourth Amendment claim cannot be granted where the petitioner had a "full and fair" opportunity to litigate the claim in state court. (R&R at 19-21 (citing Stone v. Powell, 428 U.S. 465, 494 (1976)).) Nowhere in Clark's objections has he explained how he was denied such an opportunity. There are no grounds to overturn the R&R on this issue. The Court OVERRULES the Objections and ADOPTS the R&R on this claim.

### D. Ground 1 – Ineffective Assistance of Counsel

Clark has not identified any legitimate flaw in the R&R's rejection of his first grounds for relief—ineffective assistance of counsel. Clark concedes that the claim is time barred, but argues

1 | that it is nonetheless subject to review because he can meet an excuse to procedural default under
2 | Martinez v. Ryan, 566 U.S. 1 (2012).
3 |      As Judge Leupold correctly noted, there are narrow grounds to obtain review of a
4 | procedurally-defaulted claim. (R&R at 26-29.) The petitioner must "demonstrate cause for the
5 | default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that
6 | failure to consider the claims will result in a fundamental miscarriage of justice[.]" Boyd v.
7 | Thompson, 147 F.3d 1124, 126 (9th Cir. 1998). To establish "cause," a petitioner must show
8 | some objective factor external to the defense prevented him from complying with the state's
9 | procedural rule. Coleman v. Thompson, 501 U.S. 722, 753 (1991) (citing Murray v. Carrier, 477
10 | U.S. 478, 488 (1986)). To show "prejudice," a petitioner "must shoulder the burden of showing,
11 | not merely that the errors at his trial created a possibility of prejudice, but that they worked to his
12 | actual and substantial disadvantage, infecting his entire trial with error of constitutional
13 | dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original).
14 |      Clark invokes Martinez v. Ryan and Shinn v. Ramirez, 596 U.S. 366 (2022) as grounds to
15 | excuse the procedural default of his ineffective assistance of counsel claim. As the Supreme
16 | Court has explained, there exists a limited exception where "ineffective assistance of state
17 | postconviction counsel may constitute 'cause' to forgive procedural default of a trial-ineffective-
18 | assistance claim, but only if the State requires prisoners to raise such claims for the first time
19 | during state collateral proceedings." Shinn, 596 U.S. at 380 (citing Martinez, 566 U.S. at 9).
20 | "[T]o establish 'cause' to overcome procedural default under Martinez, a petitioner must show:
21 | (1) the underlying ineffective assistance of trial counsel claim is 'substantial'; (2) the petitioner
22 | was not represented or had ineffective counsel during the [post-conviction relief ("PCR")]
23 | proceeding; (3) the state PCR proceeding was the initial review proceeding; and (4) state law
24 |

required (or forced as a practical matter) the petitioner to bring the claim in the initial review collateral proceeding." Dickens v. Ryan, 740 F.3d 1302, 1319 (9th Cir. 2014).

Judge Leupold correctly determined that Clark has not shown that his trial counsel's performance was ineffective by failing to investigate the voluntariness of Clark's statements to the police after the Miranda warning. (R&R at 29.) Notably, Clark did not identify what additional investigation would have been reasonable and what it would have shown. There is no cogent argument presented as to how counsel could have found additional grounds to bring a challenge to the post-Miranda statements. And, as the R&R correctly notes, on direct appeal the state court considered the merits of the Miranda claim and found no violation. There is thus no reasonable probability that there would have been a different outcome had counsel moved to suppress on a Miranda violation. The Court OVERRULES the Objections and ADOPTS the R&R's decision on this issue.

In his objections, Clark also argues that his ineffective assistance of counsel claim is based on his counsel's failure to challenge the scope of the second search warrant. Although Judge Leupold did not address this argument, it does appear in the petition. (See Dkt. No. 3 at 29.) But Clark has not articulated a basis on which his argument meets the Martinez/Shinn requirements. Notably absent is any basis on which to believe that the police went beyond the scope of the warrant when it was Clark himself who volunteered the passcode. And outside of the ineffective assistance of counsel context, Judge Leupold did consider the merits of Clark's Fourth Amendment claim premised on this theory and correctly held that the state court properly rejected it. This undermines Clark's claim of ineffective assistance of counsel because there is no evidence of a likelihood of different outcome had counsel made the argument.

1    Nor is the Court convinced by an additional case that Clark has identified in his
2    Objections. (See Obj'ns at 10-11 (citing United States v. Maffei, No. 18-CR-00174-YGR-1,
3    2019 WL 1864712, at *4-*5 (N.D. Cal. Apr. 25, 2019)).) Maffei provides little support because
4    the Court there found a Fourth Amendment violation when the passcode used to unlock the
5    iPhone was obtained from the defendant in violation of the defendant's Miranda rights. See
6    United States v. Maffei, No. 18-CR-00174-YGR-1, 2019 WL 1864712, at *4-*5 (N.D. Cal. Apr.
7    25, 2019). Here, with no Miranda violation, this case lends no support even if the Court accepts
8    that there is a difference between biometric and numeric passcodes. Clark has not shown that
9    counsel's failure to investigate or present this argument demonstrates ineffective assistance of
10   counsel or that it was substantial.
11   The Court OVERRULES the Objections and ADOPTS the R&R on these claims. This
12   applies to Clark's attack to both his trial and appellate counsel's performance.

**E.    Evidentiary Hearing**

The Court agrees with Judge Leupold that there is no reason to hold an evidentiary hearing. The extra-record information (the transcript of the passcode disclosure) does little to suggest that an evidentiary hearing would be warranted or productive. The Court ADOPTS the R&R's determination that an evidentiary hearing is unwarranted.

**F.    Certificate of Appealability**

The Court ADOPTS the R&R's denial of a certificate of appealability. No jurist of reason could disagree with this Court's evaluation of Clark's claims or would conclude the issues presented in the Petition should proceed further.

# CONCLUSION

Clark has not demonstrated any errors in the Report and Recommendation's rejection of his habeas petition. None of the claims warrant relief. The Court therefore OVERRULES the Objections, ADOPTS the Report and Recommendation, and DISMISSES the Petition. The Court declines to issue a certificate of appealability.

The clerk is ordered to provide copies of this order to all counsel.

Dated April 16, 2025.

Marsha J. Pechman
United States Senior District Judge